ALFRED G. GARDNER, Appellant, v. METROPOL-ITAN STREET RAILWAY COMPANY et al.

### Division One, November 27, 1909.

1. **EVIDENCE: Inequality in Height of Rails: Non-Expert.** Testimony of non-expert witnesses, who with a yard-stick, straight-edge and tape line, had measured the railway tracks at the point of accident, to the effect that the top surface of the rail on the side of the accident was one inch lower than the rail on the opposite side, was competent. Such testimony should not be excluded on the ground that the witnesses were not experts, or that the measurements were not taken with the assistance of a spirit-level.

2. ————: ————: ————: **Excluded When Offered by Defendant.** Unless the jurors know positively what evidence is to be considered by them they are in no position to properly consider the case or to return an intelligent verdict. And where the court's rulings upon the admission of proper evidence offered by plaintiff as to the height of railway rails at the point of the accident, were indefinite and uncertain, an announcement by the court when defendant, who is the appellant, offered similar testimony, that he had ruled "it was no evidence" and "there is no issue on that," makes the uncertainty definite, and it should be held that plaintiff's evidence was excluded.

3. ————: ————: ————: ————: **By Instruction.** And all uncertainty as to the court's ruling is removed by the refusal of an instruction taking from the jury the issue which the proffered testimony tended to support.

4. ————: **Exclusion: Not Assigned in Motion for New Trial.** The exclusion of proffered testimony will not be considered on appeal unless its exclusion was assigned in the motion as a ground for a new trial.

5. **REMARKS OF COURT: Not Assigned in Motion.** Remarks of the judge made during the progress of the trial, in the nature of comments upon the evidence and mild criticisms of counsel·-for appellant, cannot be considered on appeal, unless the attention of the court was called thereto in the motion for a new trial.

6. **EVIDENCE: Ex parte Report of Motorman: Admission to Show Date.** The admission in evidence of the written report of the motorman of the company detailing the facts of the accident, is not competent, is prejudicial, and there being no dispute as to the date of the accident it cannot be admitted for the purpose of showing its date. But the judgment cannot be reversed because of its erroneous admission unless appellant complained thereof in his motion for a new trial.

7. **NEGLIGENCE: Instruction: Arm Out of Window: Degree of Care.** A cross-beam was bolted to one of the poles which supported the wire which supplied the feed wire which furnished electricity to the trolley wire, and the arm of plaintiff, a passenger, slipped through the open window and was struck by this cross-beam. *Held*, that the same duty of care, caution and prudence to protect the passenger from injury from said cross-beam, it being a part of the operative equipment, rested upon defendant, as rested upon it in the operation of the car itself, and the court erred in refusing an instruction that so declared.

8. ————: ————: ————: ————: **Contradictory.** An instruction should not in one clause tell the jury that a railway company must exercise the highest degree of care to avoid injury to passengers, in constructing a cross-beam near its tracks, and in another tell them it was required to exercise only ordinary care. Such an instruction is contradictory.

9. ————: ————: **Inequalities in Track.** Where the petition charges that the rail of the track was lower on the side next to the cross-beam than its mate on the opposite side, and that in consequence thereof the car was caused to lurch or lean so near to the cross-beam as to injure the passenger's arm as it slightly protruded out of the open window, the evidence tending to prove those facts should be admitted, and it is error to so modify plaintiff's instruction as to withdraw that issue from the jury.

10. ————: ————: **Burden: General Charge.** Where the petition of the passenger charges specific acts of negligence, and is not a general charge, instructions that the burden of proof rests upon plaintiff to prove his case and continues throughout the trial, are proper. In such case the passenger does not make out a prima-facie case for damages by showing he was a passenger, was injured by a collision, and was himself free from negligence.

11. ————: Contributory: Pleaded in General Terms.  A plea of contributory negligence in general terms is, like a charge of negligence in general terms, sufficient after verdict.

12. ————: ————: Evidence: Protruding Arm.  Evidence tending to show that the passenger's arm was protruding through the car's open window, and that it was injured while in that position, is sufficient to justify the court in submitting to the jury the issue of his contributory negligence.

13. ————: Instruction: Injury at Different Place:  Variance. Where plaintiff's evidence tends to show he was injured on a south-bound car on the west side of the viaduct, it is not error to give defendant's instructions telling the jury plaintiff cannot recover if he was injured on a north-bound car on the east side of the track some distance from where plaintiff claims the accident occurred, there being evidence to support said instructions. If defendant's version of the facts were true, the proof was not a mere variance, but a departure from the pleadings.

Appeal from Jackson Circuit Court.—*Hon. Jno. G. Park*, Judge.

REVERSED AND REMANDED.

*Theoph. L. Carns* for appellant.

(1) A carrier is held to the exercise of that high degree of care, caution and foresight for the safety of its passengers that a very careful and prudent person would exercise under like circumstances. And this rule applies not only to the construction of the car, used by a street railway company, but to a trolley pole placed at the side of the track and a cross-beam placed thereon, said pole and cross-beam being both used as a part of the operative equipment of the line. Och v. Railway, 130 Mo. 51.  (2)  A witness who carefully examines the two rails of a street car track, with reference to their relative height, and lays a straight-edge across said rails and measures from the floor of the viaduct on which the track is laid, up to the wearing surface of the rails, is competent to testify as to the relative height or level of the rails, even though he

does not use a spirit-level, and even though he is not an experienced railroad man or track man. Indeed a witness would be competent to testify as to such fact, even though he had only made ocular inspection of the rails. 17 Cyc., 102 and 104; Eyerman v. Sheehan, 52 Mo. 221; Heman Construction Co. v. O'Brien, 81 Mo. App. 639; McPherson v. Railroad, 97 Mo. 253; Charlton v. Railroad, 200 Mo. 413; Hovey v. Sawyer, 87 Mass. 554; Eastman v. Amoskeag, 44 N. H. 143; Vermillion v. Do, 6 S. D. 466; Morrisette v. Railway, 76 Vt. 267; Posachane Water Co. v. Standart, 97 Calif. 476; Railroad v. Ford, 22 Tex. Civ. App. 13; Olson v. Railroad, 24 Utah 460; Lightfoot v. Tract, 123 Wis. 479. (3) It is competent to show the conditions a short time before and a short time after the accident, as bearing upon the conditions at the time. Swadley v. Railroad, 118 Mo. 268. (4) Remarks by the trial court to counsel for the plaintiff, and in the presence of the jury, such as: "Yes, that suggestion is very improper," or, "No, no, your remark is improper and will not be considered by the jury," or "I am not going to allow you to parade any incompetent testimony here before the jury," have a tendency to discredit counsel before the jury, and to cause the jury to suspect that the plaintiff, through his attorney, is seeking some unfair advantage, and thus to prejudice the jury against the plaintiff and thereby weaken his case. (5) It is not competent for the defendant, in a personal injury case, to introduce in evidence the written report of the motorman or conductor of the car on which the injury occurred, said report being made on the same evening and after the accident occurred, and giving the version of said motorman or conductor as to how the accident occurred. (6) After the plaintiff, in a personal injury case, has shown that he was injured while riding along as a passenger on the defendant's car, by being thrown against an obstruction near the track, and without any negligence on his part, the burden of proof shifts to the defendant to

explain the injury by showing that it resulted from some unavoidable cause or from the contributory negligence of the plaintiff. And, under such circumstances, an instruction to the effect that "the burden of proof continues and abides with the plaintiff throughout the entire trial" is erroneous. Olson v. Railroad, 152 Mo. 456; Och v. Railroad, 130 Mo. 51; Wilkerson v. Railroad, 26 Mo. App. 152. (7) An instruction to the jury to find for the defendant, "unless you believe and find from the evidence . . . that the plaintiff has proven by a preponderance of the testimony," . . . the acts of negligence essential to recovery, is too exacting upon the plaintiff, and is erroneous. Grant v. Rowe, 83 Mo. App. 560; Murray v. Railroad, 101 Mo. 236; Williams v. Watson, 34 Mo. 95. (8) It was error for the court to instruct the jury to find for the defendant, unless they found from the evidence that the plaintiff was injured on the west side of the track by being brought into contact with said cross-beam. And, hence, the defendant's instructions 9 and 10, are erroneous. If all the evidence were to the effect that the plaintiff was injured at the place and in the manner stated by the defendant's witnesses, still there would not be a total failure of evidence, and neither would there be a fatal variance. Murdock v. Brown, 16 Mo. App. 549; Brown v. Railroad, 14 Mo. App. 580; Lesinsky v. Railroad, 14 Mo. App. 598; Ridenhour v. Railroad, 102 Mo. 207; Hansberger v. Railroad, 82 Mo. App. 566; Stalzer v. Dold, 84 Mo. App. 565; Hurlbut v. Railroad, 130 Mo. 657; Dickson v. Railroad, 104 Mo. 491; Neir v. Railroad, 12 Mo. App. 35; Girard v. Car Wheel Co., 46 Mo. App. 79; Harley v. Railroad, 57 Mo. App. 675; Werner v. Railroad, 81 Mo. 372; Robertson v. Railroad, 152 Mo. 382; Olmstead v. Smith, 87 Mo. 607; Carroll v. Paul, 16 Mo. 226; McGrew v. Railroad, 87 Mo. App. 250; Buck v. Railroad, 108 Mo. 179. (9) There is no evidence in this case that plaintiff's arm was protruding from the window. But, if it had been so protruding, that fact

would not constitute contributory negligence *per se.* Germantown, etc., v. Brophy, 105 Pa. 83; Murphy v. Railroad, 115 Mo. 111; Winters v. Railroad, 39 Mo. 468; Miller v. Railroad, 5 Mo. App. 471; Carroll v. Railroad, 107 Mo. 663; Husenkamp v. Railroad, 37 Mo. 537; Sweeney v. Railroad, 150 Mo. 385; Farlow v. Kelley, 108 U. S. 288; Quimm v. Railroad, 29 S. C. 381; Summers v. Railroad, 34 La. Ann. 139; Kreimelman v. Jourdan, 107 App. 64; Langan v. Railroad, 72 Mo. 392; Parks v. Railroad, 178 Mo. 108; Seymore v. Railroad, 114 Mo. 226. (10) It is not negligence *per se* for a passenger to rest his elbow on the window sill of a trolley car. Schneider v. Railroad, 54 Fed. 466; Dahlberg v. Railroad, 32 Minn. 404.

*John H. Lucas* and *Ben F. White* for respondent.

Complaints of errors in regard to the admission and exclusion of evidence; and also of certain remarks of the court were not called to the attention of the trial court in the motion for new trial, and hence they are not before this court for review. This court will not convict the trial court of an error which was not called to its attention in the motion for new trial. Coffey v. Carthage, 200 Mo. 629; State v. Miles, 199 Mo. 530; State ex rel. v. Trust Co., 209 Mo. 494. (2) Appellant complains of the action of the court in modifying and giving his instruction number two as to the degree of care due to plaintiff. This instruction, in the very first paragraph, tells the jury that if plaintiff was its passenger "then it was the duty of the defendant to use and exercise that high degree of care, caution and foresight for the safety of the plaintiff that a very careful and prudent person would use and exercise under the circumstances." We think that properly describes the duty of the defendant. This portion of this instruction is not what is complained of: but it is in the instruction and we call attention to it so that this court can see whether, on the

whole, the jury were not properly directed. Complaint
is made that the court modified a portion of this in-
struction. But the part quoted from above is as it was
given to the jury. The portion of this instruction to
which objection is made is that where it is said that it
was the duty of the defendant "if it knew, or by the
exercise of ordinary care might have known" of the
close proximity of the cross-beam to the track to have
changed it. It will be noticed that the term ordinary
care refers solely and alone to the distance this cross-
beam was to the track. Nothing else is included in its
scope. The duty which defendant owed to plaintiff as
its passenger, was properly set out in this instruction.
The only matter to which this ordinary care refers is
to whether or not, by the use of such care, defendant
might have discovered the situation of this cross-beam
and so have changed it, if it needed changing. But
this could not have misled or even affected the jury in
the remotest degree, for the good and sufficient reason
that the testimony shows that the defendant put that
cross-beam there when the bridge was rebuilt, six
months or so before the accident, and actually knew its
condition all the time. If this be true, then how could
a jury be affected by an instruction in regard to the
"degree of care" which the law imposes upon it to
make the discovery? So that this modification of this
instruction could not possibly have made any difference
in the verdict of the jury. (3) The action of the court
in striking from plaintiff's instruction 2, that portion
authorizing a recovery for plaintiff if the jury should
find that there was an inequality in the height of the
two rails, and that this caused the car to lean toward
the west, was fully justified, and for two reasons: (a)
There was no competent evidence that the east rail was
the higher and, (b) no evidence of any character that
even if the east rail had been shown to be one inch
higher than the west that this in any way tended to
produce the injury. Neither the square, the stick nor

the 50-foot measure would enable a layman to make even a guess as to which of two rails was the higher. It is preposterous to say that two men, wholly without experience as railroad track men, can take a square, a 50-foot tape line and a stick and tell anything at all as to whether the one or the other of two rails is the higher. Counsel insists that this is not a matter for expert testimony, and cites cases to the effect that a layman who has used a square may testify that the distance between a post and a rail on the track is so much. But can it be possible that counsel overlooks the fact that a square is an instrument made especially for measuring distances, while a spirit level is an instrument made to ascertain levels? A square, even in the hands of a lawyer or a layman, is all that is necessary to measure the distance between a post and a car track. But to ascertain which rail of a track is highest, nothing short of a spirit level or the judgment of an experienced track man would be any more than a mere guess, and, of course, incompetent. But there is still another reason why this feature should have been eliminated from the instruction: There is no evidence anywhere in the record that even if it had been shown by competent evidence that the east rail was "about" one inch higher than the west one that this would have tended to cause the accident. Both were susceptible of proof and were alleged in the petition to have caused the accident. This instruction was properly modified.

(4) Plaintiff must recover, if at all, upon the specifications of negligence in his petition. McGrath v. Railroad, 197 Mo. 97; Orcutt v. Century Building Co., 201 Mo. 424. Appellant also complains that the court submitted the question as to whether plaintiff had his arm outside the window, first because the answer did not allege that he had his arm out, and second, because there was no evidence that he did so. As to the first, the answer pleaded contributory negligence, which was sufficient. As to the second point, we cite the testi-

mony.  Counsel cites many cases which he contends hold that to put the arm out of a window is not negligence per se.  We have not looked them up, because the instruction criticised did not make it negligence per se, but left that question to be found by the jury.  "The very act of negligence alleged must be proven, if a specified act is alleged."  Spiro v. Transit Co., 102 Mo. App. 261; McCarty v. Hotel Co., 144 Mo. 397; Fuchs v. St. Louis, 167 Mo. 620; Hite v. Railroad, 130 Mo. 132; Bartley v. Railroad, 148 Mo. 1. c. 139; Feary v. Railroad, 162 Mo. 75; Chilty v. Railroad, 148 Mo. 74; Hamilton v. Railroad, 114 Mo. App. 509; Grany v. Railroad, 157 Mo. 666; Yarnell v. Railroad, 113 Mo. 570; McMananamee v. Railroad, 135 Mo. 447.  Appellant had a fair trial.  His story was contradicted by six eye witnesses and the jury very naturally decided that he was either mistaken or not telling the truth. The verdict was for the right party and should be sustained, without regard to technical errors.  R. S. 1899, sec. 865; Bushey v. Glenn, 107 Mo. 331; Heny v. Grand Ave. Co., 113 Mo. 526; Burns v. Liberty, 131 Mo. 372; State v. Jennings, 134 Mo. 281; Carr v. Railroad, 195 Mo. 214; Wabash v. Sloop, 200 Mo. 198.

WOODSON, J.—The plaintiff was a passenger upon one of defendant's street cars, and while being carried as such he sustained the injuries complained of. He brought this suit in the circuit court of Jackson county to recover the sum of $5,000 damages for those injuries.  The trial resulted in a judgment for the defendant, and the plaintiff appealed.

The petition upon which the cause was tried, formal parts omitted, was as follows:

"For his cause of action plaintiff states that each of the defendants is a corporation, duly incorporated and existing according to law; and that b... fendants have their general offices in Kansas City, Missouri.

"That at all the times hereinafter mentioned or concerned the defendants owned, controlled and operated a street railway in Kansas City, Wyandotte county, Kansas, extending from Fifth and Central streets in said Kansas City, Kansas, in a southwesterly direction to the northern approach of a viaduct, extending northward and southward over certain railway tracks, on Seventh street in said city, and thence southward over said viaduct, and thence southward and eastward in said Kansas City, Kansas, and finally to the stockyards which are located in both said Kansas City, Kansas, and Kansas City, Missouri. That at all said times said street railway was what is known as an electric railway; that is to say, the motive power which propelled the cars thereon was electricity and was applied by means of what is known as a trolley wire running along above the tracks and over the center of the cars, together with what is known as a trolley pole extending upward from the cars and fitting with a grooved pulley to the underside of said wire. That, in constructing said railway, the defendants placed a pole or log about one foot in diameter on the west side of said viaduct and about three or four feet west from the west rail of the western track of said railway and about forty feet south from the north end of said viaduct, and stretched a cross-wire from the upper end of said pole across and over said railway for the purpose of supporting said trolley wire, which trolley wire ran lengthwise with said railway. That the defendants also placed a cross-beam upon said pole, extending horizontally eastward and westward, for the support of two heavy cables which rest upon the west end of said cross-beam. That said cross-beam is of hard wood and is about four or five inches square and four or five feet long, and is placed upon said pole about five and one-above the car track.

"That the defendants negligently and carelessly placed said cross-beam upon said pole in such a way

that the east end thereof extends about two and one-half feet eastward from said pole, and at all times mentioned herein, has extended so near to the north rail of said railway that it almost scrapes upon the cars as they pass along toward the south in crossing said viaduct.

"That the defendants negligently laid the tracks of said railway, on the west side of said viaduct, in such a manner that the east rail of said western track, at the point opposite to said cross-beam, was, at all times herein concerned, about one inch higher than the west rail thereof, and in that manner caused the cars— as they passed said point—to lean or pitch over to the westward; and, when said cars were running rapidly said inequality in said rails caused them to lean or pitch further toward the west than when running slowly. That said railway, where it crosses said viaduct, is a double track railway, and at all times herein concerned the cars ran southward on the west track and northward on the east track thereof.

"That the defendants negligently ran their cars (including the car on which plaintiff was injured, as hereinafter mentioned) along said west track and passing said dangerous cross-beam, without placing the proper guards to the windows thereof for the protection of passengers upon said cars.

"Plaintiff states that on the 19th day of June, 1904, he boarded one of defendants' cars at said Fifth and Central Streets, Kansas City, Kansas, for the purpose of being carried as a passenger to said stock-yards, and paid his fare, to-wit, five cents, to defendants' conductor in charge of said car. That said car had one seat on each side thereof running lengthwise with said car; and that the seat on the west side did not extend fully to the rear or north end of the car, but that there was a space of about two feet between the end of the seat and the end of the car.

"That, when plaintiff entered said car, he found that both of the seats therein were fully occupied by passengers, and plaintiff was obliged to stand; and that the most convenient and comfortable place that plaintiff saw in which he could stand was in said space between the end of the seat, on the west side of the car, and the rear or north end of the car, and that plaintiff accordingly took his position in said space. That plaintiff stood in said space with his face toward the front of said car and with his right elbow and lower arm resting upon the window sill of the rear window on the west side of the car, and that said window was pushed down from the top thereof until the top of said window was about even with the window sill.

"That, through the negligence of the defendants, there was no guard or other protection to said window except that there were two or three bars placed horizontally across the window about four or five inches apart; and that the lower rod or bar was about eleven inches above the window sill. That plaintiff did not know of said dangerous cross-beam or of said inequality of said rails.

"That as said car approached said cross-beam, the servants of the defendants in charge of the same, negligently ran said car at a rapid rate of speed, so that, when the car struck said point where said rails were unequal as aforesaid, the car leaned or pitched over toward the west and thus caused plaintiff's elbow to slip upon said window sill toward the west and slightly outside of the car, whereupon said cross-beam struck plaintiff's arm over the ulna bone and just below the elbow and cut plaintiff's arm to said ulna bone and bruised and fractured the same, and thus forced plaintiff's arm backward and against the rear frame of said window and broke the bone of plaintiff's arm just above the elbow and forced the ends of said broken bone through the flesh and muscles of plaintiff's arm, and

greatly bruised, wrenched and dislocated plaintiff's elbow.

"Plaintiff states that by reason of said injuries he has suffered and still continues to suffer great physical pain and mental anguish; and was confined to his house about six weeks; and has not been able to perform his usual labor since said injury occurred; and was obliged to expend and to obligate himself to expend about $130 for the services of physicians; and about $10 for medicines; and was obliged to be nursed and cared for by his wife and children, and that their services in so doing, were of the reasonable value of $75. That said injuries have resulted in a stiffening and malformation of plaintiff's right elbow joint, and in weakening plaintiff's entire right arm, and that said elbow and arm are thus permanently injured.

"Plaintiff states that he is a tailor by trade and has been such all his life, and has no other trade or calling by which to support himself and family; and that, by reason of the injuries aforesaid he is permanently disabled from pursuing said trade; and has lost and will lose his earnings in said trade, during the remainder of his life. And that all said injuries have resulted from the negligence of the defendants in placing said cross-beam too near said car tracks and permitting it to remain so; in permitting said rails to be laid unequal in height and to remain so; in failing to protect the window of said car in the proper manner as above mentioned; and in running said car at too great a speed at said dangerous place. And that the defendants knew of the dangerous condition of said cross-beam and said car and said tracks, or by the exercise of reasonable diligence could have known of the same.

"Plaintiff states that by reason of said injuries, resulting from the defendants' negligence as aforesaid,

he has been damaged in the sum of five thousand dollars,'' etc.

The answer of the Metropolitan consisted of a general denial and a general plea of contributory negligence.

The cause was dismissed as to the Kansas City Elevated Railway Company.

The reply was a general denial.

Plaintiff's evidence tended to prove all of the allegations of the petition; and that of the defendant tended to prove that the plaintiff was injured while a passenger on one of its cars, on the day and at the hour, as shown by plaintiff, and on the same viaduct; but that the injury occurred while the car was going north, on the east side of the viaduct, instead of on the west side of the viaduct, while the car was going south, as alleged by plaintiff. Defendant's evidence also tended to show that the injury occurred about one hundred and fifty yards south of where plaintiff claims it occurred, and that the injury was caused by plaintiff's arm coming in contact with a trolley pole, which stood on the west side, some ten or twelve inches from the line of the car, as it passed, instead of coming in contact with a cross-beam which stood on the east side, about the same distance from the line of the car, as plaintiff's evidence tended to show. In other words, there was no question raised as to the fact that plaintiff was a passenger and that he was injured by defendant while he was being carried as such; the difference between them being as to when and where the injury occurred, and the question of negligence and contributory negligence.

The plaintiff asked the court to instruct the jury as follows:

''1. The court instructs the jury that if you find from the evidence that the plaintiff was a passenger on one of the cars then being operated by the defendant in Kansas City, Kansas, on or about the 19th day of

June, 1904, and that said car was at that time being run southward over a viaduct which passes over certain railroad tracks on Seventh street in said city; and if you further find from the evidence that there was at said time a pole standing on said viaduct, and just west of the track on which said car was so running, and that there was a cross-beam bolted on to said pole in such a way that the east end of the same was very close to and within a few inches of said car as it was so passing along; and if you further find from the evidence that at said time, and while said car was so passing said cross-beam the plaintiff's elbow or lower arm was brought into contact with said cross-beam, and that plaintiff was injured thereby, and if you further find from the evidence that at said time and place, the defendant was guilty of negligence, such as is defined in other instructions given you by the court, and that said injuries to plaintiff, if any, resulted from such negligence, then your verdict must be in favor of the plaintiff, unless you further find from the evidence that the plaintiff was guilty of negligence on his own part which directly contributed to said injuries.

"2. The court instructs you that if you find from the evidence that the plaintiff was a passenger on a car which was being operated by the defendant, at the time and place referred to in other instructions, then it was the duty of the defendant to use and exercise that high degree of care, caution and foresight for the safety of the plaintiff that a very careful and prudent person would use and exercise under like circumstances.

"And if you find from the evidence that at said time and place there was a post or pole standing at the west side of the track on which said car was running, and that there was a cross-beam bolted on to said pole in such a way that the east end of the same extended near enough to said track to endanger passengers on said car, and nearer to said track than a very careful

and prudent person would have permitted under like circumstances, and that defendant knew of said condition of said cross-beam or by the exercise of said high degree of care and caution might have known the same in time to have changed said cross-beam and thereby prevented the injury to plaintiff, if any, then the defendant was negligent in said particular.

["Or, if you find from the evidence that at said time and place the window of said car at which the plaintiff claims to have been standing was not as well guarded or protected for the safety of passengers as a very careful and prudent person would have guarded or protected the same under like circumstances, and that defendant knew of such condition of said window, or by the exercise of said degree of care and caution might have known the same in time to have changed the same and thereby prevented the injury to plaintiff, if any, then the defendant was negligent in said particular.]

"Or if you find from the evidence that at said time and place the east rail of said track was higher than the west rail thereof, and that said inequality of the rails caused the car to lean or pitch over toward the west as it was passing said point, and thereby endanger passengers on said car, and that such inequality was greater than a very careful person would have permitted under like circumstances, and that defendant knew of said condition, or could have known the same by the exercise of said degree of care in time to have repaired said track and prevented such injuries to plaintiff, if any, then defendant was negligent in said particular.

"3. The court instructs you that the defense of contributory negligence, which is set up and charged by the defendant in this action, is an affirmative defense which must appear from the evidence; and that you cannot find a verdict against the plaintiff on this

Gardner v. Met. Street Ry. Co.

ground alone, unless it has been shown in the evidence that the plaintiff was guilty of some negligent act or acts on his own part which directly contributed to the injuries complained of. And such negligent acts or acts must be such as a reasonably prudent person would not have been guilty of under like circumstances.

"In determining whether or not the plaintiff was guilty of contributory negligence, as herein defined, you will take into consideration all the facts and circumstances, shown in the evidence, and, unless it has been shown in the evidence that the plaintiff was guilty of some act or acts of negligence which a reasonably prudent person would not have been guilty of under like circumstances, and that such act or acts directly resulted in the injuries complained of, you will not find a verdict against the plaintiff upon the ground of contributory negligence alone.

"4. You are further instructed that if you shall find a verdict in favor of the plaintiff, you may assess his damages at such a sum, not exceeding five thousand dollars, as you may believe from the evidence will be a fair and reasonable compensation to him:

"First. For such pain of body and mind, if any, as you may believe from the evidence that he has already suffered, and such bodily pain, if any, as you may believe from the evidence he is reasonably certain to suffer hereafter, as a direct result of the injuries complained of.

ready suffered, and such bodily pain, if any, as you may believe from the evidence that he has sustained, or is reasonably certain to sustain hereafter, as a direct result of the injuries complained of.

"Third. For such permanent injuries to plaintiff's body, if any, as you may believe from the evidence that he has sustained as a direct result of said injuries.

"Fourth. For such expenses for doctor's bills, if any, not exceeding $100, as you may find from the evi-

dence that he has necessarily incurred and expended as a result of the injuries complained of.''

The court gave said instructions numbered one, three and four, but refused to give two as asked, but modified it by striking out the words ''said high degree of care and caution,'' and inserting in their stead the words ''ordinary care,'' and by detaching and eliminating therefrom the following clauses: ''Or, if you find from the evidence, that, at said time and place the east rail of said track was higher than the west rail thereof, and that said inequality of the rails caused the car to lean or pitch over toward the west as it was passing said point, and thereby endanger passengers on said car, and that such inequality was greater than a very careful person would have permitted under like circumstances, and that defendant knew of said condition or could have known the same by the exercise of said degree of care in time to have repaired said track and prevented such injuries to plaintiff, if any, then defendant was negligent in said particular.'' The court gave instruction numbered 2 in its modified form.

To which action of the court the plaintiff duly excepted.

The defendant, upon its part, prayed the court to instruct the jury as follows:

''1. The court instructs the jury that the burden of proof is on the plaintiff to prove to your satisfaction by the preponderance of the credible testimony, that defendant was guilty of negligence as submitted to you in these instructions, and this burden of proof continues and abides with the plaintiff throughout the entire trial; and unless you believe and find from the evidence in this case that the plaintiff has proven by a preponderance of the credible testimony to your reasonable satisfaction that the defendant was guilty of negligence as defined in these instructions, and that such negligence was the proximate cause of the in-

juries complained of, then your verdict must be for the defendant.

"By 'Preponderance of the evidence' is meant the greater weight of credible testimony.

"2. The court instructs the jury that you are the sole judges of the credibility of the witnesses and the weight and value to be given to their testimony, and in determining what weight and credit you will give to the testimony of any witness you should consider his or her conduct and demeanor on the stand, his or her interest in the case on trial; his or her opportunity to know and be informed as to the facts which they undertake to give testimony; and their ability to clearly remember and to clearly state such facts; their willingness or unwillingness to testify to any facts of which you may believe they have knowledge.

"3. It was the duty of the plaintiff to exercise ordinary care for his own safety, and if he failed to do so and such failure on his part directly contributed to the injuries complained of, then he cannot recover in this case, and your verdict will be for the defendant, even though you may find that the defendant was also negligent as defined in these instructions. By ordinary care as used in this instruction is meant such care as would be exercised by an ordinary prudent person under like circumstances.

"4. The court instructs the jury that there is no evidence that the car of defendant was run at a negligent rate of speed at the time and place of the accident.

"5. The court instructs the jury that this case should be considered by you the same as if it was a contest between two persons of equal standing in the community; the fact that one of the parties is a corporation should not and must not affect your minds in any way in the consideration of the case; the rights of the parties should be and must be determined upon

the evidence introduced and the instructions given to the jury, which are the law and the only law to guide you in your deliberations.

"6.   The court instructs the jury that if you find and believe from the evidence that the plaintiff knew or by the exercise of reasonable and ordinary care and diligence might or could have known that if he put his arm out of the window, or through the bars upon the side of the car, there was danger of his arm being struck and injured, and that he negligently put his arm out of the window or through the bars, and was thereby struck and injured, then your verdict will be for the defendant.

"7.   The court instructs the jury that unless you find and believe from the evidence that the plaintiff has proven by a preponderance of the testimony to your satisfaction that he was struck by a cross-beam on the west side of the viaduct about eighty feet south of the north end thereof, while riding south upon defendant's car, your verdict must be for the defendant.

"8.   If you find from the evidence that plaintiff was injured on a north-bound car and on the east side of the viaduct, and not on a south-bound car on the west side of the viaduct, your verdict will be for defendant."

The court, over the objections of plaintiff's counsel, gave to the jury the foregoing instructions. To which action of the court in giving same, the plaintiff at the time duly excepted.

The errors assigned by counsel for appellant relate to the admission and rejection of testimony, and to the giving and refusing instructions. We will mention such parts of the evidence and such of the instructions during the course of the opinion as may be necessary for a proper determination of the questions presented for our consideration.

I.  We will first consider the errors assigned regarding the rulings of the court as to the rejection of testimony offered by the appellant.

Appellant offered the testimony of some two or three witnesses who had observed and measured with a yardstick or straight-edge and a tape line the tracks of respondent just opposite the cross-beam, mentioned in the evidence, to the effect that the top surface of the east rail of the west track was one inch higher than the west rail thereof.  This evidence was offered for the purpose of proving that when the car passed the cross-beam in rapid motion it was thereby caused to lurch or pitch to the westward until the line of the car passed so near to said beam as to throw appellant's arm against the same and thereby inflicted the injury complained of

This evidence was by the court excluded, for the reasons that it was not shown that the witnesses who took the measurements were experts in such matters, and because it was not shown that the measurements were made with the assistance of a spirit-level.

The exclusion of that evidence was clearly erroneous, as will appear by reading the following authorities:  17 Cyc. 102 and 104; Eyerman v. Sheehan, 52 Mo. 221; Heman Const. Co. v. O'Brien, 81 Mo. App. 639; McPherson v. Railroad, 97 Mo. 253; Charlton v. Railroad, 200 Mo. 413; Hovey v. Sawyer, 5 Allen 554; Eastman v. Amoskeag, etc., 44 N. H. 143; Vermillion v. Vermillion, 6 S. D. 466; Morrisette v. Railroad, 76 Vt. 267; Posachane Water Co. v. Standart, 97 Cal. 476; Railroad v. Ford, 22 Tex. Civ. App. 13; Olson v. Railroad, 24 Utah 460; Lightfoot v. Traction Co., 123 Wis. 479.

The rule respecting measurements is stated as follows, in 17 Cyc. Prac. & Proc. at p. 102:  "An observer may state his estimate of size, including height, depth, breadth, thickness and width, and any change in these or other dimensions.  The statement is merely one of fact as to which any person who has applied the meas-

urements may testify, with weight proportionate to his age and experience.'' And on page 104 of same volume, it is said: "In the absence of accurate measurements, a person of adequate knowledge and judgment may state the grade of a ditch, hill or railroad track.''

In Hovey v. Sawyer, 5 Allen 554, the Supreme Court of Massachusetts said: "As to where the highest point of a hill is, is a question upon which one man could not have any more or better means of forming an opinion than any other person of ordinary intelligence; and it is not a question for expert testimony.''

In Eastman v. Amoskeag, 44 N. H. 143, the Supreme Court said: "In questions relating to heights and distances, and as to the number, quantity and dimensions of things, a witness may not be able to testify without an implied expression of opinion; but this is no objection to the testimony upon such points and subjects.''

It has also been held competent for a witness to testify as to the height to which a stream of water was thrown, when his only criterion was the height of a house near by, and he did not know the height of the house. [Vermillion v. Vermillion, 6 S. D. 466.] And for a witness to testify as to the size of a lantern, simply upon inspection. [Morrisette v. Railroad, 76 Vt. 267.]

So also held competent for a witness to testify that the grade of a ditch was not more than five feet to the mile. Here the appellant contended that, since the grade was a matter susceptible to exact measurement, the judgment of the witness was not competent. But the court held otherwise, and stated that, although this evidence might be overcome by a showing of the exact measurements, still the evidence was competent. [Posachane Water Co. v. Standart, 97 Cal. 476.]

It has been held competent for a witness to testify that there was a sharp curve and a sharp grade on the

railroad at the point of accident. [Railroad v. Ford, 22 Tex. Civ. App. 131; Olson v. Railroad, 24 Utah 460.]

It is competent for a witness to estimate the height of a wood wagon. [Lightfoot v. Traction Co., 123 Wis. 479.]

In this State a witness was permitted to give his estimate of the depth, or thickness, of broken stone. And the court further held that the witness might add his opinion, under certain circumstances. [Eyerman v. Sheehan, 52 Mo. 221.] This court also held that it was competent for a witness to give his estimate of the distance of a crane from a passing train, from his observation alone. [Charlton v. Railroad, 200 Mo. 413.]

Counsel for respondent do not contend said evidence was not competent; but their insistence is that said evidence was in fact admitted by the court and not excluded as contended for by counsel for appellant.

By reading page 56 of the abstract of the record, it will be seen that witness Carns testified as follows: "The east track was about an inch higher than the west track at that point; the east rail of the west track was about an inch higher than the west rail at that point, and when Mr. Gardner and Mr. Gilley went over it, the track was in the same condition that it was when I first went there." And on page fifty-nine appellant testified: "Well, we measured the east track, and we found it about an inch higher than the west one, that is, on the curve."

While the record shows that Carns and appellant made the foregoing statements accredited to them, yet the ruling of the court is not clear and definite upon their admission, until we reach the ruling of the court upon the admission of the testimony of the witness Bullock. On pages 109 and 110 of the abstract, the following occurred: "Q. State to the jury what was the condition of the track over the viaduct, Mr. Bullock, with reference to its being either rail level with

the other along the other side. A. The track was perfectly level. Mr. Carns: 'I object to that question until it is shown that the witness had knowledge at that particular time.' The Court: 'Yes, and unless he put a level to it.' Mr. Loomis: 'The other gentlemen did not.' The Court: 'I held it was no evidence; there is no issue on that?' ' "

This ruling of the court made definite and certain that which was before indefinite and uncertain.

The rulings of the court should always be unequivocal and so definite in character as to leave no room for doubt in the minds of the jury, as to what evidence is admitted and as to what is excluded. Without the jurors know positively what evidence is to be considered by them they are in no position to properly consider the case, or to return an intelligent verdict. Even without the last ruling of the court, its previous rulings were so indefinite and uncertain as to afford just grounds for complaint on the part of appellant; and with the last added, there can be no doubt but what the effect thereof was to exclude all the evidence which tended to show the rails of the track were uneven at the place of the accident.

This is also made clear by the action of the court in striking out of appellant's second instruction all reference to his right to a recovery on account of the uneven condition of the rails.

This instruction will receive further consideration presently.

The exclusion of this evidence was error. The exclusion of that evidence virtually took from the jury the charge of negligence regarding the throwing of appellant against the cross-beam.

II. Counsel for appellant also complains of the action of the court for excluding various offers of testimony; but by an examination of the motion for a new trial, as suggested by counsel for respondent, we find

that none of those rulings was assigned as a ground for a new trial. This court will not reverse a judgment of the trial court for error which was not called to its attention in the motion for a new trial. [Coffey v. Carthage, 200 Mo. l. c. 629; State v. Miles, 199 Mo. 530; State ex rel. v. Trust Co., 209 Mo. l. c. 494.]

III. Certain remarks of the judge made during the progress of the trial, in the presence and hearing of the jury, in the nature of comments upon the evidence and mild criticisms of counsel for appellant, constitute the basis of this complaint. Whatever merit there might have been in this assignment, appellant is in no position to complain, for the reason that the attention of the court was not called to those matters in the motion for a new trial. See authorities cited under the preceding paragraph.

IV. The same is true with regard to the objection lodged against the testimony of the witness, Ithry Fitzhugh, giving his opinion as to appellant's condition at the time the injury was inflicted. The motion for a new trial did not call the attention of the court to this alleged error, consequently the court had no opportunity to correct its ruling regarding the admission of that testimony.

V. Over the objection of counsel for appellant, the court admitted in evidence the following written report of the injury, made by Joseph Floerke, motorman, who was in charge of the car which injured appellant:

"Office of Metropolitan Street Railway Company. Kansas City Elevated Railway Company, 621 Temple Block, Kansas City, Missouri, 6-20, 1904.

"No. 49656.

"Mr. Jas. Flosnke, 1512 North 19. Ks.

"Your name having been returned to us by a conductor as one of the several witnesses to an accident

which is said to have occurred on our line at 7th and Kansas—4:30 p. m. June 19, we therefore ask you, as a favor, to answer the following questions, in order to have as complete an account as can be obtained.

"Respectfully,

"BERNARD CORRIGAN, President.

| "Questions. | ; Answers. |
| --- | --- |
| "What is your full name? | Joseph Floerke. |
| Address? | 1999 Dora Ave. K. C. Mo. |
| Occupation? | Junk Dealer. |
| Did you see the accident? Give date and time. | June 19th, 4:30 p. m. |
| Where did it occur? | 7th St. Wydock, K. C. Ks. |
| Where were you when the accident took place? | In front platform. |
| Was the train in motion? | Yes. |
| Was the bell ringing? | Not necessary at the point. |
| Do you know anyone else that saw the accident? | No. |
| If so, give name and address. | |
| Who in your opinion is to blame for the accident? | The injured man. |
| Please give full account of the accident as witnessed by you, showing no favor to either side. | I have seen the man leaning or resting white his arm in raling or window protachen on car and the first post came in contact and the man got sick. |

Date June 19th, 1904.

Joseph Floerke.

"Address, 1999 Dora Avenue, Kansas City, Missouri."

It was stated by the court that this report was admitted for the purpose of showing the date of the injury.

Clearly, the admission of this report was erroneous. There was no dispute as to the date of the in-

jury.  The petition stated that it occurred on June
19th, 1904, and all of the evidence bearing upon that
point which was introduced by both appellant and re-
spondent showed the injury occurred upon that date.

If the date of the injury had been in dispute, then
the motorman could have refreshed his memory from
the report, but the report itself was not competent and
should have been excluded.  By its admission the jury
was permitted to hear read the *ex parte* account of the
injury made by the motorman, not under oath, nor was
he cross-examined by any one on behalf of appellant.
That evidence was highly prejudicial to him, and should
have been excluded.  [Sharp v. Railroad, 213 Mo. 517.]
But notwithstanding this error was committed, we can-
not reverse the judgment therefor, for the reason that
appellant did not complain of that error in his motion
for a new trial.  Consequently, he cannot avail himself
of it.  [Coffey v. Carthage, supra.]

VI.  The action of the court in refusing to give
for appellant instruction numbered two, as asked by
him, and in modifying it, and giving it in said modified
form is complained of as error by counsel for appel-
lant.

There are two errors assigned to that ruling.  It
is first insisted that it was the duty of the respondent
to use and exercise that high degree of care, caution
and foresight for the safety of the appellant that a
very careful and prudent person would have used and
exercised under like circumstances. And that the court
should have told the jury that if they believed said
cross-beam was placed nearer to the track in question
than a very careful and prudent person would have
permitted under like circumstances, and that respond-
ent knew of said condition of said cross-beam, or by
the exercise of said high degree of care and caution
might have known the same in time to have changed it
and thereby prevented the injury, and that it failed to

do so, then appellant was entitled to a recovery. This is clearly the law of this State, as has been held by this court in scores of cases. [Lemon v. Chanslor, 68 Mo. 340.]

This cross-beam was bolted to one of the poles which supported the wire which supplied the feed wire which furnished the electricity for the trolley wire. The pole, cross-beam and wire were all necessary parts of the equipment furnished and used in furnishing the motive power for the cars. And the law imposed the same degree of care upon respondent in providing and furnishing that equipment as it did in furnishing safe cars in which passengers were to ride.

In discussing this question, this court in the case of Och v. Railroad, 130 Mo. l. c. 51, said: "While carriers of passengers are not insurers of their safety, and are not responsible when all reasonable care, skill and diligence, prudence and foresight have been employed, the law imposes upon them the utmost care and skill in selecting and furnishing safe means of transportation, and to that end to provide safe coaches and appliances, necessary for that purpose, including every part and parcel thereof, which very prudent men would exercise under like circumstances, and when the injury to the plaintiff was shown to have been occasioned by the falling upon her head of a ventilating window from the coach in which she was riding, then it devolved upon the defendant to show by a preponderance of the evidence that the injury was caused by something not under its control, and not from any fault, want of care, or watchfulness upon its part. The same degree of care was required of defendant as to all parts and all kinds of its property used in the transportation of its passengers, as compared with its liability to cause injury to them. The same rule applies when the injury is caused by the want of diligence or care by those employed by the carrier. In Meier v. Railroad, 64 Pa. St. 225, it was said: '*Prima facie,*

where a passenger, being carried on a train, is injured without fault of his own, there is a legal presumption of negligence, casting upon the carrier the *onus* of disproving it. . . . . This is the rule when the injury is caused by a defect in the road, cars, machinery or by a want of diligence or care in those employed, or by any other thing which the company can or ought to control as a part of its duty, to carry the passengers safely; but this rule of evidence is not conclusive.'' See also Clark v. Railroad, 127 Mo. 197; Dougherty v. Railroad, 81 Mo. 325.

The refusal of the court to give appellant's instruction which so declared the law was error.

But counsel for respondent insists that the court so instructed the jury. In a sense that is true, but it is also true that in the same instruction at another place the court told the jury that respondent was only required to use ordinary care in that regard. So the most that can be said of this instruction is that the two clauses mentioned are inconsistent with and contradictory of each other. Such an instruction is erroneous. The jury had no means of knowing which of the two properly declared the law of the case, and we have no means of knowing which of the two the jury did follow.

And the second error urged against the ruling of the court relates to its action in striking therefrom the paragraph submitting to the jury the question of respondent's negligence in constructing and maintaining the east rail of the track in question higher than the west rail thereof, and that in consequence thereof the car was caused to lurch or pitch so near to the cross-beam as to injure appellant's arm. The evidence which tended to prove those facts should have been admitted, as before stated, and this clause of this instruction should have been given, submitting that question to the jury.

This question came before this court in the case of Gage v. St. Louis Transit Co., 211 Mo. 139; and at page 156 this language was used: "Plaintiff complains of the action of the court in refusing to permit her to prove that street cars while in motion will rock and sway from side to side, on account of the inequalities of the track. We are of the opinion that said ruling was not error, for the reason that it is common knowledge that a car being propelled by steam or electricity over a railroad track will be swayed by inequalities of the track. [Geitz v. Railroad, 72 Wis. 307; Railroad v. Smith, supra, l. c. 271.] The juror's knowledge of those facts is equal to that of any witness who might testify upon the subject. The swaying of the car is caused by the operation of the law of gravity and the mechanical forces used in propelling the car. When a wheel of the car comes to a low place on the rail, the law of gravity carries it to the lowest point, and the mechanical forces operating upon the car, in turn, raise it to the highest point of the rail. This motion of the car will cause the car to rock from side to side where there are inequalities in the surface of the two rails; and if there are no inequalities, but both rails are depressed alike, then the motion of the car will be from end to end and not from side to side. All men of ordinary intelligence and observation know those facts; and the testimony of witnesses explaining those motions and their causes would shed no additional light upon the question. It is proper, however, to show whether or not the surface of the rails and tracks at the point of the injury were even or uneven at the time of the accident."

We are, therefore, of the opinion that the court erred in excluding said evidence and in refusing appellant's second instruction as asked; and also in modifying it and giving it in its modified form.

VII.  Instructions numbered one and seven given on behalf of respondent are complained of by counsel for appellant.  They, in effect, told the jury that the burden of proof was upon appellant to prove his case; and that said burden continued with him throughout the case.

Appellant invokes the doctrine that a passenger makes out a *prima-facie* case of damages against a common carrier for personal injuries when he shows that he was injured by a collision and was himself free from negligence.  [Olsen v. Railroad, 152 Mo. 426; Orcutt v. Building Co., 214 Mo. 35.]

This rule only applies where the petition charges negligence in general terms, and does not apply where it specifically pleads the negligent acts which caused the injury, as the petition in this case does.  [Beave v. Railroad, 212 Mo. 331; Klebe v. Distilling Co., 207 Mo. 480; Kirkpatrick v. Railroad, 211 Mo. 68.]

We, therefore, hold under the pleadings in this case there was no error in giving the instructions complained of.

VIII.  It is the next insistence of counsel for appellant that the court erred in submitting to the jury the question of contributory negligence.

It is first claimed the court erred in that regard, for the reason that contributory negligence was not pleaded.  Counsel is in error in this.  The answer pleads contributory negligence in general terms, which, like a plea of negligence in general terms, is good after verdict.

The second contention is that there was no evidence which tended to show appellant was guilty of contributory negligence.  Counsel is also in error in this matter.  The evidence tended to show that appellant was riding with a portion of his arm protruding through the car window.  This alone was sufficient to justify the court in submitting to the jury the question

of contributory negligence.    [Gage v. Railroad, 211 Mo. 139.]

There was no error in submitting the question of appellant's contributory negligence to the jury. But the court should not have told the jury that such act constituted negligence *per se* and would prevent a recovery.  [Gage v. Railroad, supra; Murphy v. Railroad, 115 Mo. 111; Seymour v. Railroad, 114 Mo. 266.]

IX.  The final insistence of counsel for appellant is that instructions numbered seven and eight given by the court on behalf of appellant are erroneous.

They, in effect, told the jury that if they found from the evidence that appellant was struck by a cross-beam on the west side of the viaduct about eighty feet south of the north end thereof, while he was riding south upon one of respondent's cars, then their verdict should be for respondent.

[The petition charged and appellant's evidence showed that he was injured on a south-bound car and on the west side of the viaduct; while the evidence of respondent tended to show that he was injured on a north-bound car and on the east side of the viaduct.]

Appellant contends that if it be conceded the respondent's version of the facts was true, still that was not such a total departure between the allegations of the petition and the proof as would prevent a recovery, but was simply a variance which was not fatal to a recovery.

We are unwilling to lend our assent to this insistence, but are in full accord with the following views expressed by counsel for respondent upon that subject:

"It was charged that a certain combination of circumstances produced the injury. These were:  A cross-beam placed too close to the west track, about 80 feet south of the north end of the viaduct; that the east rail of the west track, at that particular point, was an inch higher than its mate; that this car was run

over this spot at an excessive rate of speed, which caused the car to lurch or lean toward this cross-beam, and the injury was thus produced. Plaintiff can only recover by proving that he was hurt by some one or all of these acts. No law is better settled than this.''

There is no pretense that these same conditions existed at the place where respondent's evidence showed the injury occurred; but concede that the same condition did exist, still they were not the same as those charged in the petition, and which appellant's evidence showed did exist in fact, and which caused the injury. ''The very act of negligence alleged must be proven, if a specified act is alleged.'' [Spiro v. Railroad, 102 Mo. App. 261; McCarty v. Hotel Co., 144 Mo. 397; Fuchs v. St. Louis, 167 Mo. 620; Hite v. Railroad, 130 Mo. 132.]

The court properly gave said instructions.

The judgment is reversed for the errors before pointed out, and the cause is remanded to the circuit court for a new trial.

All concur.